**Jose Abel GARZA, Appellant,**

v.

**ATTORNEY GENERAL of Texas and Margarita A. Yogi, Appellees.**

**No. 13–02–153–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 9, 2005.

Charles Manning, Beeville, for appellant.

Brenda J. Heinold, Office of Atty. General/Child Support Division, Victoria, Rhonda Pressley, Asst. Attorney General, John Worley, Asst. Attorney General Child Support Division, Austin, Jose L. Aliseda, Jr., Beeville, for appellees.

Jose L. Aliseda Jr., for Margarita A. Yogi.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice CASTILLO.

Appellant Jose Abel Garza filed a petition for bill of review to set aside a default judgment for child support and retroactive child support in a paternity action. After an evidentiary hearing, the trial court denied the bill of review and filed findings of fact and conclusions of law. This appeal ensued. We affirm.

## I. BACKGROUND

Appellee, the Attorney General, filed a SAPCR to establish the parent-child relationship between Garza and his minor daughter, J.M.G., born of Garza's relationship with appellee Margarita A. Yogi.[1] The Attorney General prosecuted the suit to establish paternity and obtained the default judgment against Garza. On May 18, 1999, the trial court entered the default order establishing the parent-child relationship between Garza and J.M.G., and requiring that Garza pay (1) $417.00 monthly child support, and (2) $200.00 monthly payments toward a default retroactive child support judgment granted in the same decree.[2] The Attorney General

---

1. A SAPCR is a "suit affecting the parent child relationship," which, in part, is a suit requesting the appointment of a managing or possessory conservator, access to or support of a child. *See* Tex. Fam.Code Ann. 101.032(a) (Vernon 2002). The Legislature has given the Attorney General standing to file a child support action, as it did in this case. *See* Tex.

Fam.Code Ann. §§ 102.007, 231.101 (Vernon 2002).

2. *See* Tex. Fam.Code Ann. § 154.131. (Vernon 2002). Section 154.131 vests a trial court with discretion to determine whether to award retroactive child support and the amount of that support. *See In·re Valadez,* 980 S.W.2d 910, 913 (Tex.App.-Corpus Christi

filed a certificate of last known address on May 18, 1999. On June 1, 2001, the Attorney General filed a motion to enforce, alleging non-payment of court-ordered child support and retroactive child support.[3] On October 1, 2001, Garza filed a petition for bill of review. Germaine to Garza's complaint in his petition and on appeal are his allegations that (1) in the original paternity action, he was not personally served with citation; and (2) after the trial court entered a default judgment against him, he did not receive notice of the default judgment.

## II. ISSUES PRESENTED

Garza presents two issues on appeal. In the first, Garza argues that the trial court's finding that he was personally served with process on March 30, 1998, is so against the overwhelming preponderance of the evidence as to be manifestly unjust. In his second issue, Garza argues that, in light of the failure of the district clerk to comply with Texas Rules of Civil Procedure 239a and 306a, such that he received no actual notice of the May 18, 1999, default judgment until November 1999, his conduct in November 1999 to begin the withholding of child support and his failure to file a petition for bill of review until 2001 do not justify the trial court's denial of the bill of review.

## III. BILL OF REVIEW

■ A bill of review is an equitable proceeding to set aside a judgment that is no longer appealable or subject to a motion for new trial. *State v. 1985 Chevrolet Pickup Truck,* 778 S.W.2d 463, 464 (Tex. 1989) (per curiam) (op. on reh'g); *Baker v. Goldsmith,* 582 S.W.2d 404, 406 (Tex.1979); *Mowbray v. Avery,* 76 S.W.3d 663, 682 (Tex.App.-Corpus Christi 2002, pet. denied), *cert. denied, Mowbray v. State,* 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991). Upon the expiration of the trial court's plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law. *See* TEX.R. CIV. P. 329b(f). To have the judgment set aside, the complainant must first meet certain pretrial burdens and then prevail on the merits. *Baker,* 582 S.W.2d at 408–09 (describing complainant's pretrial prima facie burden of proof); *Kessler v. Kessler,* 693 S.W.2d 522, 526 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.).

■ The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point. *King Ranch v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (citing *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996, 998 (1950)); *see also Transworld Fin. Servs., Corp. v. Briscoe,* 722 S.W.2d 407, 407 (Tex.1987); *Montgomery v. Kennedy,* 669 S.W.2d 309, 312 (Tex. 1984). The burden on a bill of review

---

1998, pet. denied). Retroactive support is available in two separate circumstances. First, it can be ordered in instances where child support has not been previously ordered. TEX. FAM.CODE ANN. § 154.009 (Vernon 2002); *In the Interest of J.G.Z.,* 963 S.W.2d 144, 146 (Tex.App.-Texarkana 1998, no pet). Secondly, a trial court has the discretion to retroactively modify a child support obligation. TEX. FAM.CODE ANN. § 156.401(b) (Vernon Supp.2005–05); *In re Tucker,* 96 S.W.3d 662, 667 (Tex.App.-Texarkana 2003, no pet.).

The purpose in allowing retroactive child support is to remove any motive on the part of the obligor to engage in delay tactics. *In re H.S.N.,* 69 S.W.3d 829, 833 (Tex.App.-Corpus Christi 2002, no pet.); *J.G.Z.,* 963 S.W.2d at 149. In this case, the retroactive child support judgment is for $47,538.00. J.M.G. was born on December 31, 1989.

3. Garza filed an answer and motion to modify child support on September 21, 2001.

petitioner is heavy. *See Layton v. Nationsbanc Mortgage Corp.*, 141 S.W.3d 760, 763 (Tex.App.-Corpus Christi 2004, no pet.).

Before a litigant can successfully invoke the equitable powers of the court and secure a bill of review to set aside a final judgment, he must generally allege and prove (1) a meritorious defense to the cause of action alleged to support the judgment; (2) which he was prevented from making by the fraud, accident, or wrongful act of the opposing party; and (3) unmixed with any fault or negligence of his own. *King Ranch*, 118 S.W.3d at 752 (citing *Hagedorn*, 226 S.W.2d at 998); *see also Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex.1999) (per curiam); *Baker*, 582 S.W.2d at 407–08. The petitioner must further allege, with particularity, sworn facts sufficient to constitute a meritorious defense and, as a pretrial matter, present prima facie proof to support the contention. *1985 Chevrolet Pickup Truck*, 778 S.W.2d at 464.

We review the granting or denial of a bill of review under an abuse of discretion standard. *Manley v. Parsons*, 112 S.W.3d 335, 337 (Tex.App.-Corpus Christi 2003, pet. denied). In reviewing the grant or denial of a bill of review, we indulge every presumption in favor of the trial court's ruling and will not disturb that ruling unless the trial court abused its discretion. *Layton*, 141 S.W.3d at 762–63; *Narvaez v. Maldonado*, 127 S.W.3d 313, 319 (Tex.App.-Austin 2004, no pet.); *Parsons*, 112 S.W.3d at 337. A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles. *Layton*, 141 S.W.3d at 763. When the inquiry on the bill of review concerns questions of law, such as whether an appellant presented prima facie proof of a meritorious defense, we review the trial court's

decision de novo. *Parsons*, 112 S.W.3d at 337 n. 2.

Appellate review of the trial court's findings of historical fact is deferential because the trial court is in a better position to weigh credibility and make such determinations. *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex.2002). In applying the abuse of discretion standard, reviewing courts defer to the trial court's factual determinations; a reviewing court does not engage in its own factual review, but decides whether the record supports the trial court's resolution of factual matters. *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633–34 (Tex.2000); *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997). If the record supports the trial court's evidentiary findings, the reviewing court is not at liberty to disturb them. *$217,590.00*, 18 S.W.3d at 634 (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992)). A reviewing court instead determines only whether the trial court properly applied the law to the facts in reaching its legal conclusion. *See $217,590.00*, 18 S.W.3d at 634; *Segura v. State*, 826 S.W.2d 178, 181 (Tex.App.-Dallas 1992, pet. ref'd).

A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Packer*, 827 S.W.2d at 839; *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Packer*, 827 S.W.2d at 839; *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex.1989). Under this standard, an appellant must establish that the trial court could reasonably have reached only one decision. *Packer*, 827 S.W.2d at 840; *Johnson*, 700 S.W.2d at

917. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Packer*, 827 S.W.2d at 840; *Johnson*, 700 S.W.2d at 918.

## IV. LACK OF PROPER SERVICE

■ In his first issue, Garza asserts the finding of service was so against the overwhelming weight of the evidence as to be manifestly unjust. The Attorney General responds, in essence, that the trial court made the appropriate credibility determinations in reaching its decision.[4] A defendant who challenges a default judgment on the basis of defective service must do so by motion for new trial, or if the trial court's plenary power has expired, by bill of review. *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 710 (1961).[5]

### A. Particularized Standard of Review

We begin by considering what a bill of review plaintiff must prove when claiming lack of service of process. As we have noted, a bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *See Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex.2004) (per curiam) (citing *Baker*, 582 S.W.2d at 406).[6] A bill of review plaintiff must ordinarily plead and prove (1) a meritorious defense to the underlying cause of action; (2) which the plaintiff was prevented from making by the fraud, accident, or wrongful act of the opposing party or official mistake; (3) unmixed with any fault or negligence on their own part. *See id.*

■ Bill of review plaintiffs claiming non-service, however, are relieved of two elements ordinarily required to be proved in a bill of review proceeding. *Caldwell*, 154 S.W.3d at 96. First, if a plaintiff was not served, constitutional due process relieves the plaintiff from the need to show a meritorious defense. *Id.* at 96–97 (citing *Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 86–87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (holding that the meritorious defense requirement in a bill of review proceeding violates due process where the bill of review plaintiff has no notice of the proceeding in which the default judgment was rendered)). Second, the plaintiff is relieved from showing that fraud, accident, wrongful act, or official mistake prevented the plaintiff from presenting such a defense. *Id.* at 97; *see also Palomin v. Zarsky Lumber Co.*, 26 S.W.3d 690, 693 (Tex.App.-Corpus Christi 2000, pet. denied). A bill of review plaintiff alleging he was not served, however, must still prove the third and final element required in a bill of review proceeding—that the judgment was rendered unmixed with any fault or negligence of his own. *Caldwell*, 154 S.W.3d at 97. An individual who is not served with process cannot be at fault or negligent in allowing a default judgment to

---

4. Yogi relies on the Attorney General's brief.

5. *McEwen* provides:

 When the time for filing a motion for new trial has expired and relief may not be obtained by appeal, a proceeding in the nature of a bill of review is the exclusive method of vacating a default judgment rendered in a case in which the court had jurisdictional power to render it. Into this category will fall those cases in which a default judgment is asserted to be void for want of service, or of valid service, of process.

 *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 710 (1961).

6. Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex.1999) (per curiam).

be rendered. *Id.* Proof of non-service, then, will conclusively establish the third and only element that bill of review plaintiffs are required to prove when they are asserting lack of service of process as their only defense. *Id.*

Because proof of non-service conclusively negates a plaintiff's fault or negligence, where material facts are disputed the question of service is properly resolved at trial and not by the trial court in a pretrial proceeding. *Caldwell,* 154 S.W.3d at 97. In sum, when a plaintiff seeks a bill of review based solely on a claim of non-service, the bill of review procedure outlined in *Goldsmith* must be slightly modified. *See Goldsmith,* 582 S.W.2d at 408–09.[7] When a plaintiff claims lack of service, the trial court should do the following: (1) dispense with any pretrial inquiry into a meritorious defense; (2) hold a trial, at which the bill of review plaintiff assumes the burden of proving that the plaintiff was not served with process, thereby conclusively establishing a lack of fault or negligence in allowing a default judgment to be rendered; and (3) conditioned upon an affirmative finding that the plaintiff was not served, allow the parties to revert to their original status as plaintiff and defendant with the burden on the original plaintiff to prove his or her case. *Caldwell,* 154 S.W.3d at 97–98.

At trial, the testimony of a bill of review plaintiff alone, without corroborating evidence, is insufficient to overcome the presumption that the plaintiff was served. *Caldwell,* 154 S.W.3d at 98 n. 3. While the bill of review plaintiff must assume this burden, the bill of review defendant must assume the burden of proving

7. *See also State v.1985 Chevrolet Pickup Truck,* 778 S.W.2d 463, 464 (Tex.1989) (per curiam)

his original cause of action. *See Baker,* 582 S.W.2d at 409. This assures that the original, underlying cause of action is supported by the weight of the evidence. *Id.* The fact finder first determines whether the bill of review plaintiff has established by a preponderance of the evidence that entry of the prior default judgment occurred absent any fault or negligence on the bill of review plaintiff's part. *See id.; see also Caldwell,* 154 S.W.3d at 97. Conditioned upon an affirmative finding to this effect, the fact finder then must determine whether the bill of review defendant, the original plaintiff, has proved the elements of his original cause of action. *See Baker,* 582 S.W.2d at 409. Once it is found that the bill of review plaintiff is suffering under a wrongfully-obtained judgment that is unsupported by the weight of the evidence, equity is satisfied and the court should grant the requested relief. *See id.*

In the bill of review procedure, "all facts may be considered, not just those appearing on the face of the record." *Gold v. Gold,* 145 S.W.3d 212, 214 (Tex. 2004) (per curiam). Final judgment in a bill of review proceeding should either deny any relief to the petitioner or grant the bill of review and set aside the former judgment. *See Baker,* 582 S.W.2d at 409. Only one final judgment may be entered in a bill of review action. *Id.*

In conducting this review, the standard for which remains abuse of discretion, we are mindful that legal and factual sufficiency of the evidence are not independent grounds of error but are merely factors to be assessed in determining if the trial court abused its discretion. *Zieba v. Martin,* 928 S.W.2d 782, 786 (Tex. App.-Houston [14th Dist.] 1996, no writ).

(op. on reh'g).

In determining whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's action, indulging every presumption in favor of the judgment. *Zorilla v. Wahid,* 83 S.W.3d 247, 253 (Tex.App.-Corpus Christi 2002, no pet.). If some probative and substantive evidence supports the trial court's findings, the trial court did not abuse its discretion. *Id.*

## B. The Law

■■■ There are no presumptions in favor of valid issuance, service and return of citation in the face of a direct attack by bill of review on a default judgment. *Palomin v. Zarsky Lumber,* 26 S.W.3d 690, 693 (Tex.App.-Corpus Christi 2000), pet. denied (citing *Uvalde Country Club v. Martin Linen Supply Co.,* 690 S.W.2d 884, 885 (Tex.1985) (per curiam)). A default judgment is improper against a defendant who has not been served in strict compliance with the law, accepted or waived service, or entered an appearance. *See* Tex.R. Civ. P. 124; *Wilson v. Dunn,* 800 S.W.2d 833, 836 (Tex.1990); *Palomin,* 26 S.W.3d at 693. In order to uphold a default judgment on direct attack, return of service must be shown to strictly comply with the rules of civil procedure. *Primate Constr., Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex.1994) (per curiam).[8]

■■■ Lack of service is purely a question of fact which must be determined by the trier of the facts. *Ward v. Nava,* 488 S.W.2d 736, 738 (Tex.1972). Although the law makes no presumptions favoring validity of service in an attack on a default judgment, an officer's return is prima facie evidence of the facts recited therein. *Primate Constr.,* 884 S.W.2d at 152–53. "The return of service is not a trivial, formulaic document. It has long been considered

prima facie evidence of the facts recited therein." *Id.* (citing *Pleasant Homes v. Allied Bank of Dallas,* 776 S.W.2d 153, 154 (Tex.1989) (per curiam)); *Gatlin v. Dibrell,* 74 Tex. 36, 11 S.W. 908, 909 (1889) ("The return of the officer imports absolute verity, and was sufficient to authorize the rendition of judgment upon default."); *see also West Columbia Nat'l Bank v. Griffith,* 902 S.W.2d 201, 206 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party. *Primate Constr.,* 884 S.W.2d at 152; *West Columbia,* 902 S.W.2d at 206.

## C. The Record

■■■ Garza and the child's mother, appellee Margarita A. Yogi, apparently lived together between approximately 1987 and 1991. They never married. When the child was born on December 31,1989, Garza consented to placing his name on her birth certificate. Garza testified that, when the relationship ended, Yogi told him he was not the father of the child. She requested that Garza sign papers to that effect and provide them to her attorney. He failed to do so. Garza testified that he paid child support to Yogi until May 1999 in checks or money orders totaling $11,045, and he also gave Yogi a car and cash payments (for which he had no receipts) in the amount of $14,300. In March 1998, Yogi filed a petition to determine parent-child relationship. Yogi provided the Rosario Street address on the petition to the Attorney General because Garza used that address between 1987 and 1991.

The return of citation reflects personal service on Garza at the address provided, 1405 North Rosario, Alice, Texas, on

---

8. If strict compliance is not shown on the face of the record, return of service is deemed invalid. *Primate Constr. Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex.1994).

March 30, 1999.[9] Garza and several witnesses testified that he was not personally served because he was not at that address on that date. His daughter, Jo Ann Pitts, testified that she was home at that address when the deputy sheriff came early on a morning in March 1999. She testified that her brother Carlos and her husband were also at home on that day. Jo Ann remembered the circumstances because the deputy laughed at her, and she later determined it was because of her disheveled appearance. She testified that they discussed whether the deputy was looking for her father or brother, Jose Jr., and they determined by the birth date that Garza was the person. Jo Ann told the deputy the house was her father's but she lived there. The deputy sheriff handed her the papers and requested that she give them to Garza when she next saw him. Without reading them and without understanding that they were important or what they were, Jo Ann placed the papers, which were stapled and folded in a three-fold, in a box for Garza's mail.

Jo Ann testified that her father was not in town on that day and was possibly in Pleasanton, Texas. Garza returned to Alice in late June 1999 and read the papers at that time. Garza noted that the hearing was on May 18, 1999, too late for him to attend. Jo Ann also testified that deputies had looked for Garza before for law-related concerns.[10]

Garza's son, Carlos Garza, testified that he lived at the Rosario address in March 1999, in a smaller house in the back. On the date in question, he arose late in the morning and went to Jo Ann's house at the front of the property. He recalled Jo Ann and her husband laughing because of her appearance when the deputy arrived earlier that morning. Carlos did not see his father at the house that day because Garza was working somewhere else. Carlos confirmed that mail and other papers for his father were kept for him in a box. He saw some folded up papers in the box but did not look at them. Carlos spoke with Garza after he received the papers. Garza was concerned because he had missed the court date.

Garza's wife, Mary Jane, testified that they had lived on Lynn Street since early 1998 but they lived apart several months during 1998 and 1999, when Garza lived at the Rosario Street address.[11] Mary Jane testified that in March 1999 Garza was not home because he was unemployed and seeking work. She had no knowledge of his location until after his return. In late June, Mary Jane learned that Garza had received the papers when Garza arrived home, and was upset that Jo Ann had not earlier told him about the papers. She testified they were not aware of any child support orders and had no discussions about a judgment regarding child support. She knew Garza had been sending money for the child since long before they were married. She testified that a deputy came to their house on Lynn Street in August 2001, but she had no recollection of any

9. The return of service shows that Garza was served on March 30, 1999, with an order setting the SAPCR hearing for May 18, 1999.

10. She explained that a deputy had previously tried several times to deliver the papers, each time asking for "Jose Abel Garza." Each time, the deputy was told he was not there and left. On March 30, 1999, the deputy left the papers with her. She further explained that her brother, Jose Abel Garza Jr., received

"tickets," but deputies did not look for him at the residence while she lived there. These were the only papers ever given to her, she said, and the deputy verified they were for her father and not her brother.

11. Jo Ann also testified that Garza lived at the Lynn Street address with Mary Jane when he was in town.

deputy coming to that address in March 1999.

Garza testified he was not in Alice in March 1999 because he was staying with his brother in Pleasanton, while looking for work.[12] Garza had been unemployed from 1998 until he was hired by his current employer in November 1999. Garza testified he had no knowledge of any efforts to serve or locate him until Jo Ann gave him the paternity suit papers in late June or early July 1999—too late to appear for the May court date. Garza remembered the approximate date because they were discussing the Fourth of July. He did not do anything about the documents at that time because he thought his probation would be revoked for missing a court date.[13] He testified that, had he known about the hearing, he would have attended because he knew the child support award would have been much less since he had been unemployed for over a year.

Garza admitted that the address on his probation records is 1405 Rosario Street. He admitted he reported to his probation officer in April and again in July 1999. Garza agreed that the papers would have been at Jo Ann's house in April and admitted that he did not check his mail at that time. He visited his and Yogi's daughter, even while in Pleasanton, but Yogi did not

tell him of the suit. Garza stressed that he was never given any papers in person by the deputy.

Deputy sheriff Aubrey Harper testified he could not have served a woman with the documents because he always made sure he gave papers to the person named for service. The only exception, he stated, was for a rule 106 order.[14] He would not have indicated personal service on the paperwork, as in this case, if he had not personally served the papers. He had no independent recollection of Garza or the particular event or day.

Yogi testified that she asked Garza about child support in the Fall of 1999, and he said, "What are you talking about?" She confirmed she personally did not send any notices to Garza about court proceedings.

### D. Discussion

 The trial court's findings included the following: (1) Garza was properly and personally served on March 30, 1999, the date reflected on the officer's return of citation; and (2) because he failed to respond and failed to appear at the hearing, the default judgment establishing the parent-child relationship was properly entered against him on May 18, 1999.[15] In his first issue, Garza asserts the finding of service was so against the

---

12. Garza testified that, during this time frame, he received most of his important mail at his post office box address. The citation shows both the Rosario Street address and a post office box for purposes of service.

13. Garza explained he was on probation for DWI and missing a court date might lead him to jail.

14. Rule 106 authorizes service of citation by leaving a true copy of the citation and petition with anyone over sixteen years of age at a specified location, upon proper motion and order. *See* Tex.R. Civ. P. 106(b)(1).

15. In this case, the district court's order denying Garza's petition for bill of review was accompanied by findings of fact and conclusions of law. Because we have a complete reporter's record, we are not bound by the trial court's findings of fact. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). Instead, we review the findings of fact for legal and factual sufficiency of the evidence to support them, under the same standard as reviewing jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In considering legal sufficiency, we consider all of the evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor. *Associ-*

overwhelming weight of the evidence as to be manifestly unjust. We construe the issue as a factual sufficiency complaint.[16]

Garza testified that he was not personally served. Garza's daughter, Jo Ann Pitts, corroborated that testimony, and his son Carlos also testified to his father's absence from their house and town on that date. The deputy sheriff testified, to the contrary, that it was his custom and practice to personally serve named individuals, and he would not have indicated personal service on the citation unless that had in fact occurred. The deputy sheriff also testified that he had no independent recollection of the specific event or circumstances.

Garza also testified that he failed to check his mail when he returned to town to report to his probation officer in April. Garza testified he had no knowledge of the suit until late June when Jo Ann gave him the papers, and that he failed to act at that time because he was afraid he would be arrested for missing the hearing date.

### E. Disposition

In alleging lack of service of citation, Garza must prove by a preponderance of

the evidence that the judgment was rendered unmixed with any fault or negligence of his own. *See Caldwell*, 154 S.W.3d at 96–97; *see also Baker*, 582 S.W.2d at 408–09. Viewing all the evidence neutrally, with proper deference to the trial court's resolution of historical facts and conflicts in testimony, we conclude that the evidence is not too weak to support the finding that Garza was properly served on March 30, 1999. The finding is not so against the overwhelming weight of the evidence as to be manifestly unjust. Because material facts were disputed, the question of service was properly resolved at trial and not by the trial court in a pretrial proceeding. *See Caldwell*, 154 S.W.3d at 97. We conclude that the trial court did not abuse its discretion in determining that the preponderance of the evidence did not show lack of service of citation. We overrule Garza's first issue.

### V. LACK OF NOTICE UNDER RULES 239a and 306a

### A. The Trial Court's Findings

Findings of the trial court included the following: (1) after November 1999, Garza

---

ated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285–86 (Tex.1998). In reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). We review a court's conclusions of law de novo. *Black v. City of Killeen*, 78 S.W.3d 686, 691 (Tex.App.-Austin 2002, pet. denied). The final analysis of whether the court erred in denying a petition for bill of review remains subject to the abuse of discretion standard of review. *Manley v. Parsons*, 112 S.W.3d at 335, 337 (Tex.App.-Corpus Christi 2003, pet. denied).

16. When determining the factual sufficiency of the evidence, the party attacking a finding on which an adverse party bore the burden of

proof must show that the record presents "insufficient evidence" to support the finding. *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex.App.-Fort Worth 1995, no writ). In attacking for factual insufficiency an adverse finding on which it bore the burden of proof at trial, a party must show that the finding is against the "great weight and preponderance of the evidence." *Raw Hide Oil & Gas v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.-Amarillo 1988, writ denied). We examine and consider all the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) (op. on reh'g); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

"began to comply with the judgment;" and (2) Garza, with actual notice of the judgment in November 1999, "failed to take any action to petition a court in law or in equity for any remedies until the year 2001, when the Attorney General began an enforcement action against him."

In his second issue, Garza argues that, because the district court failed to provide him with timely notice of the judgment, he was not barred from relief by bill of review by either his failure to act more quickly or by his payment of child support as ordered under the judgment. The Attorney General responds that Garza failed to prove the absence of his own negligence, a required element of a bill of review alleging untimely notice of judgment.

### B. Rules 239a and 306a

Texas Rule of Civil Procedure 239a provides that at or immediately prior to the time an interlocutory or final default judgment is rendered, the clerk shall mail written notice thereof to the party against whom the judgment was rendered at the address indicated in the certificate of last known mailing address. Tex.R. Civ. P. 239a.[17] The rule continues: "Failure to comply with the provisions of this rule shall not affect the finality of the judgment." Tex.R. Civ. P. 239a; *see also John v. State*, 826 S.W.2d 138, 140 (Tex.1992) (per curiam). Failure to comply with rule 239a is not grounds for reversible error. *Campbell v. Fincher*, 72 S.W.3d 723, 725 (Tex.App.-Waco 2002, no pet.).

Rule 306a (formerly 306d), regarding the trial court's plenary power, provides that "[w]hen the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record ... advising that the judgment or order was signed."[18] Failure to comply will not af-

17. Rule 239a, "Notice of Default Judgment," states:

At or immediately prior to the time an interlocutory or final default judgment is rendered, the party taking the same or his attorney shall certify to the clerk in writing the last known mailing address of the party against whom the judgment is taken, which certificate shall be filed among the papers in the cause. Immediately upon the signing of the judgment, the clerk shall mail written notice thereof to the party against whom the judgment was rendered at the address shown in the certificate, and note the fact of such mailing on the docket. The notice shall state the number and style of the case, the court in which the case is pending, the names of the parties in whose favor and against whom the judgment was rendered, and the date of the signing of the judgment. Failure to comply with the provisions of this rule shall not affect the finality of the judgment.

Tex.R. Civ. P. 239a.

18. Rule 306a, "Periods to Run From Signing of Judgment," states, in part:

1. Beginning of periods. The date of judgment or order is signed as shown of record shall determine the beginning of the periods prescribed by these rules for the court's plenary power to grant a new trial or to vacate, modify, correct or reform a judgment or order and for filing in the trial court the various documents that these rules authorize a party to file within such periods including, but not limited to, motions for new trial, motions to modify judgment, motions to reinstate a case dismissed for want of prosecution, motions to vacate judgment and requests for findings of fact and conclusions of law; but this rule shall not determine what constitutes rendition of a judgment or order for any other purpose.

. . .

3. Notice of judgment. When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed. Failure to comply with the provisions of this rule shall not affect the periods mentioned in paragraph (1) of this rule, except as provided in paragraph (4).

4. No notice of judgment. If within twenty days after the judgment or other appealable order is signed, a party adverse-

fect the periods of time running from the signing of the judgment, except as provided in rule 306a(4). Tex.R. Civ. P. 306a(3). Rule 306a(4) provides that if notice has not been received or sent, the time periods set out in the rule shall begin on the date that such party does receive such notice, "but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed." Tex.R. Civ. P. 306a(4).

### C. The Record

Garza testified he received a certified letter in November 1999 stating that he must pay $417 a month in child support and $200 per month toward satisfaction of the judgment. At that time, he called the Attorney General in Victoria to find out how much he must pay. He testified: "I had a child, I knew I had to pay for child support. I knew that." He referred the Attorney General to his employer's secretary to effect wage withholding. Garza testified he learned about the $47,538 judgment much later. When he visited J.M.G., Yogi told Garza that he must pay her $617 a month for child support. Garza did not believe her because "a lot of times she would say a lot of other things."

Yogi testified that she spoke with Garza about child support in the Fall of 1999. She asked about the child support, and he said "What are you talking about?" She confirmed she provided Garza no notices of child support proceedings. Yogi received a copy of the May 1999 judgment from the Attorney General, and not from the clerk of the court.

Deputy Brenda Gonzales of the Bee County district clerk's office testified as to the custom and practice of the district clerk's office. She was familiar with a certificate of last known address, a document filed when a default judgment is entered. Gonzales testified that, once the document was recorded, the custom and practice of the district clerk's office was to send, by regular mail, certified copies of the default judgment to the parties. She did not know what exactly happened in this case but stated that each file should have a notation that this was done.

The record shows that the Attorney General provided the district clerk a notice of Garza's last known address. The record does not show evidence or a notation that the district clerk sent the required notice of the default judgment to Garza. As previously noted, Garza testified he was out of town, was not personally served by the deputy sheriff with the SAPCR, and did not receive the documents from his daughter until late June 1999. Garza undertook no steps to protect his interests until November 1999, when he received notice of the Attorney General's motion for enforcement. According to Garza, it was at that time that he learned of the final judgment for retroactive child support entered on May 18, 1999.

The trial court found Garza had actual knowledge of the judgment in November 1999. The finding is not challenged. Garza argues this finding supports the conclusion that the district clerk failed to comply with rules 239a and 306a, and, thus, the default judgment should be vacated. He argues that his request to be-

ly affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice

or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed.

Tex.R. Civ. P. 306a.

gin withholding of child support, in accord with the judgment, and his failure to immediately petition for review of the judgment do not operate to deny him relief by petition for a bill of review. The Attorney General responds that Garza's inability to overcome the trial court's finding of proper service means that any inquiry associated with a failure to timely receive notice must be limited to whether Garza satisfied the remaining bill of review elements. The Attorney General posits that, whether or not timely notice of the default judgment was sent, Garza must prove the absence of his own negligence, and this he did not do.

### D. Discussion

#### 1. Failure of the Clerk to Provide the Requisite Notice

██ A petitioner for relief by bill of review is required to show that his failure to file a motion for new trial or appeal was not due to any fault or negligence on his or his counsel's part. *See Petro–Chemical Transp., Inc. v. Carroll,* 514 S.W.2d 240, 246 (Tex.1974). Relief by bill of review is generally available only if a party has exercised due diligence in pursuing all adequate legal remedies against a former judgment. Here, Garza argues that he first learned of the default judgment only after the time frame in which those remedies might have been pursued. This position is consistent with the trial court's finding that Garza received actual notice of the default judgment in November 1999. *See Hagedorn,* 226 S.W.2d at 998.

#### 2. The Laches Argument

██ Garza argues that because he had no proper notice of the entry of the default judgment, such that he was unable to pursue other legal remedies, he is not barred from relief by bill of review by his failure to act more promptly once he learned of the judgment. We agree. "As long as the bill of review was filed within the statutory time period, the plaintiffs' nearly two-year delay in bringing it after learning of the default judgment did not bar relief absent some element of estoppel or extraordinary circumstance that would render the bill's enforcement inequitable." *See Wembley,* 11 S.W.3d at 928 (citing *Caldwell,* 975 S.W.2d at 538). "Laches should not bar an action on which limitations has not run unless allowing the action 'would work a grave injustice.' " *Caldwell,* 975 S.W.2d at 538. The trial court's finding to the contrary will not support a denial of relief through bill of review. *Id.*

We note, however, this laches argument is directed to Garza's entitlement *to seek* relief through a bill of review. *Id.* While Garza is not thereby barred from seeking that relief, it does not mean he is entitled to that relief, which requires a separate analysis. No extraordinary circumstance is apparent that would prevent application of this general rule.

### E. Other Requirements of a Bill of Review Petitioner

#### 1. The Absence of a Petitioner's Own Negligence

██ Although Garza is entitled to seek relief under a bill of review, he must still establish the absence of his own negligence to be entitled to a grant of that relief. *Mowbray,* 76 S.W.3d at 682; *Hagedorn,* 226 S.W.2d at 998. In order to be entitled to relief through a bill of review, a petitioner must generally satisfy three elements, including the absence of his own fault or negligence in letting the judgment be taken against him. *West Columbia,* 902 S.W.2d at 206; *Winrock,* 879 S.W.2d at 149. This requirement not only encompasses whether a petitioner was (a) negligent in allowing the trial court to render the default judgment against him, but also

(b) whether he exercised due diligence in availing himself of all legal remedies against the former judgment. *Winrock,* 879 S.W.2d at 149; *Magan v. Hughes Tel. Network, Inc.,* 727 S.W.2d 104, 105 (Tex. App.-San Antonio 1987, no writ). One who has neglected to pursue an alternative legal remedy such as a motion for new trial, an appeal, or a writ of error is not entitled to seek equitable relief by way of bill of review. *Winrock,* 879 S.W.2d at 149; *Rizk v. Mayad,* 603 S.W.2d 773, 776 (Tex.1980).

 The supreme court has further clarified the distinction between these two aspects of negligence: a bill of review petitioner must plead and prove that his failure to present a meritorious defense is "unmixed with any fault or negligence of his own." *Hagedorn,* 226 S.W.2d at 998. A bill of review petitioner must also show that he exercised due diligence to pursue all adequate legal remedies to the judgment in controversy or show good cause for failing to exhaust the same. *Mowbray,* 76 S.W.3d at 682 (citing *Caldwell,* 975 S.W.2d at 537). If the petitioner had legal remedies which were available but ignored, relief by equitable bill of review is unavailable. *Mowbray,* 76 S.W.3d at 682 (citing *Wembley,* 11 S.W.3d at 927).

The evidence reflects that Garza relied principally upon his argument of no personal service and no knowledge of the suit or the May hearing until late June. The evidence reflects that Garza was in Alice in April 1999 in order to report to his probation officer, but he failed to check his mail at that time. The evidence reflects that Garza did nothing after reviewing the suit papers in June. Further, when he did learn of the full nature of the judgment in November 1999, Garza had a telephone conversation with the Attorney General's office, after which he took steps to deduct the appropriate child support from his paycheck. He did not challenge the ruling of the trial court.

We have determined that legally sufficient evidence exists, including the testimony of the deputy sheriff and the citation, to sustain the trial court's finding that Garza was properly and personally served with the initial suit. Having found Garza was personally served, we conclude that sufficient evidence existed to enable the trial court to conclude that Garza was negligent in either failing to appear at the hearing, prevent entry of the judgment, or pursue available legal remedies to overturn the judgment. The trial court could properly conclude that Garza failed to establish the absence of his own negligence.

## 2. Fraud, Accident or Mistake

 A petitioner for a bill of review must also generally prove that he was prevented from presenting a meritorious defense by fraud, accident or mistake on the part of his opponent. Garza is relieved of this necessity where, as here, he demonstrates that the judgment resulted from his reliance on a court officer who improperly executed his official duties. *Briscoe,* 722 S.W.2d at 408 (citing *Hanks v. Rosser,* 378 S.W.2d 31, 35 (Tex.1964)).

 Where a petitioner has been denied the opportunity to present a defense to a prior suit, or file a motion for new trial or appeal of the same, because of the reliance on the improper execution of an official duty by a court functionary (here, the failure to provide notice of any entry of a default judgment), this "official mistake doctrine" will permit the petitioner to raise such mistake as an alternative to proving the second element of a bill of review (namely, that petitioner was precluded from raising his defense by the fraud, accident or mistake of the opposing party). *See Mowbray,* 76 S.W.3d at 683. Garza has demonstrated mistake by the court

clerk and therefore is excused from establishing fraud, accident or mistake on the part of Yogi.

### 3. A Meritorious Defense

■ A final requirement of a bill of review petitioner is that he tender a meritorious defense. At the hearing held December 13, 2001, Garza's counsel argued there was no need to tender a meritorious defense or to show fraud, accident or mistake by the opposing party because his argument was based principally upon improper service. Counsel relied upon *Palomin*, 26 S.W.3d at 693 and *Peralta*, 485 U.S. at 80, 108 S.Ct. 896. Counsel was correct in advising that these elements need not be proven if the argument revolves around allegations of improper service. However, that does not obviate applicability of those factors where an argument relates to rules 239a and 306a.

In *Farias v. Besteiro*, 453 S.W.2d 314, 319 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.), the petitioner alleged she had not received timely notice of the judgment. The court determined that the most relief she could expect was being excused from complying with the second of the three *Hagedorn* requirements, that she was prevented from setting forth a meritorious defense by the fraud, accident or mistake of the opposite party. *Farias*, 453 S.W.2d at 319 (citing *Rosser*, 378 S.W.2d at 34). "Appellant, in order to plead a cause of action in her bill of review, would still have to allege that she had a meritorious defense, and that her failure to

present such defense was not caused by any fault of negligence of her own." *Farias*, 453 S.W.2d at 319. Farias's alleged meritorious defense was found to be conclusory, vague, and so general as to be subject to the special exceptions which were filed.[19] *Id.*

Garza, arguing he was not obligated to present a meritorious defense because the central issue was whether he had been personally served, relies upon *Rosser*, 378 S.W.2d at 31, *Petro–Chemical*, 514 S.W.2d at 244, and *Buddy "L", Inc. v. Gen. Trailer Co., Inc.*, 672 S.W.2d 541, 545 (Tex.App.-Dallas 1984, writ ref'd n.r.e.).[20] The Attorney General responds that the finding that Garza was properly served disposes of the issue, since he could have acted earlier to pursue other available legal remedies.

In *Rosser*, the court believed that Hanks had been misled by the erroneous official information given by the clerk. The court held that "if a litigant is misled or prevented from filing a motion for new trial by misinformation of an officer of the court … the trial court, upon finding that the party has a meritorious defense and that no injury will result to the opposite party, may grant the bill of review." *Rosser*, 378 S.W.2d at 31. This language still mandates that a meritorious defense be presented. In *Petro–Chemical*, the petitioner sought to set aside a default judgment in order that he might have the opportunity to show that he had a meritorious defense. The court, citing *Rosser*, discussed the judicial and legislative history of rule 306d and the rule's purpose and observed:

---

19. Farias alleged she was not indebted to appellees, and that appellees owned no interest in the tract of land.

20. In *Buddy "L"*, this issue was not directly addressed because Buddy "L" stipulated for the purposes of the hearings and without any prejudice to the trial on its merits that Gener-

al Trailer had pled and proved a meritorious defense to the cause of action alleged to support the judgment previously entered by default. *Buddy "L", Inc. v. Gen. Trailer Co., Inc.*, 672 S.W.2d 541, 544 (Tex.App.-Dallas 1984, writ ref'd n.r.e.).

The finality of judgment is an important consideration, but in our opinion a court of equity should not be utterly without power to grant relief where the right to attack an unjust judgment has been lost through the failure of the clerk to perform the mandatory duty imposed by Rule 306d. . . . We hold that *where the other conditions discussed below are met,* a bill of review may be predicated on the clerk's failure to send the notice required by Rule 306d.

*Petro–Chemical,* 514 S.W.2d at 245 (emphasis added). The conditions then immediately addressed "below" by our sister court included the need to present a meritorious defense. The court relied upon *Overton v. Blum,* 50 Tex. 417, 423–24 (1878), which held that the trial court acted properly in dismissing the bill of review since that appellant had failed to show "that he has suffered any such injury . . . as would warrant a court of equity to enjoin or set aside the previous judgment." *Petro–Chemical,* 514 S.W.2d at 245–46. In other words, it was still important to make a prima facie case of a meritorious defense:

In the first place, final judgments should not be disturbed unless there is good reason for doing so. And secondly, a failure to consider the merits of the first judgment in the bill of review proceeding might make two appeals necessary when the petition for a bill of review was denied by the trial court. . . . The applicant should set out in his petition with some particularity the errors he claims were committed against him in the trial and disposition of the original suit. He should also introduce the transcript, and the statement of facts where needed in the consideration of the alleged errors, in the original suit.

*Id.* at 246.

In his petition for bill of review, Garza alleged that Yogi told him at one point that he was not the child's father and, more importantly, that his earnings history failed to support or justify the award of child support and back child support. He set out with particularity the problems with the judgment. Attached to the petition is Garza's affidavit, in which he addresses the issue of notice of the paternity suit, paternity of the child, child support that he had been paying, and his ability to pay at the rate assessed by the trial court. We conclude that the petition for the bill of review adequately alleged a meritorious defense and particularized supporting facts.

Garza introduced the clerk's and reporter's records from the bill of review proceedings. Although counsel for Garza argued that he did not need to present a meritorious defense because he relied upon his contention of lack of proper service, he also urged that he was nevertheless ready and able to proceed with presenting a prima facie meritorious defense. The trial court repeatedly advised that it would not proceed to the merits. Garza cannot be penalized for a decision of the trial court that prevented him from addressing a meritorious defense at the hearing. We note further that no controverting evidence or testimony was presented on the issue.

## F. Mootness Based Upon Partial Compliance with the Default Judgment

■ We address the final contention of Garza, because a trial court finding exists on this issue. The trial court apparently based its denial of the bill of review on two basic premises: (1) laches; and (2) its conclusion that the controversy became moot when Garza undertook to comply with the judgment by arranging to pay child support in accordance therewith.

We note there were three components to the default judgment in issue here: (1) determination of paternity; (2) an award of future child support; and (3) an award of back child support. Garza effectively acknowledged the determination of paternity and the obligation to pay future child support. The record reflects he made arrangements with his employer to begin child support payments when he received notice of the enforcement action filed by the Attorney General of Texas. Garza argues, however, that he believed he was paying only future child support and was not accepting the judgment's award of $47,058 in back child support. He argues that compliance with the order to pay future child support does not prevent him from challenging the default judgment. Garza contends further that his compliance with a portion of the judgment was not voluntary.

Garza acknowledges that in *Valley Baptist Med. Ctr. v. Gonzalez,* 33 S.W.3d 821 (Tex.2000) (per curiam), the appeal became moot when the appellant produced a representative for deposition, thereby complying with the trial court's discovery order. However, the case is distinguishable—the entire issue on appeal in that matter involved the discovery order and an emergency motion to stay the depositions. Upon production of the witness, there ceased to be a live controversy. *Id.* at 822.

In *Employees Fin. Co. v. Lathram,* 369 S.W.2d 927 (Tex.1963), the underlying judgment had already been paid in full by United, a non-appealing defendant. If the claim were remanded, the trial court would be faced with "no prosecuting plaintiff, with no judgment against petitioners, with all legal obligations of the petitioners to the plaintiff discharged by United and with no pleadings by United seeking contribution from petitioners." *Id.* at 930. Since reversal and remand would afford no effec-

tive relief whatsoever, the matter was deemed to be entirely moot. *Id.* at 929–30. The reasons for mootness in *Lathram* are distinguishable from the situation here.

In *Riner v. Briargrove Park Prop. Owners,* 858 S.W.2d 370 (Tex.1993) (per curiam), the supreme court agreed that where a party "does not voluntarily pay a judgment, his appeal is not moot. A party does not voluntarily pay a judgment if he satisfied that judgment after execution of a judgment." *Id.* at 370 (citations omitted) (citing *Highland Church of Christ v. Powell,* 640 S.W.2d 235, 236 (Tex.1982)). *Riner* paid the judgment only after Briargrove sought to execute its judgment against him. *Riner,* 858 S.W.2d at 371. The court determined the circumstances failed to reflect a voluntary payment, Riner had not waived his appeal, and the issue was not moot. *Id.*

Applying this law to the facts of this case, we agree that Garza did not waive his right to a bill of review, and a bill of review was not moot simply because Garza undertook to pay child support after being notified of the enforcement action by the Attorney General of Texas.

### G. Disposition

We are thus faced with the situation where two of the findings of the trial court cannot be sustained. The order of December 31, 2001, denying the bill of review reflects only that, after reviewing the evidence and hearing the arguments, the bill of review was denied. Costs were assessed against Garza. The findings of fact and conclusions of law, which issued January 11, 2002, reflect the trial court's determination of the following: (1) Garza was properly and personally served with process on March 30, 1999; (2) he failed to respond and failed to appear at the hearing; (3) he received actual notice of the judgment in November 1999; (4) after that

he began to comply with the judgment; (5) despite learning of the judgment in November 1999, he failed to take any action until 2001 when the Attorney General began its enforcement action; and (5) there is no basis in fact or in law to grant the bill of review which was denied.

We review a trial court's challenged conclusions of law as legal questions. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). Accordingly, we apply a de novo standard. *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994); *ASAI v. Vanco Insulation Abatement,* 932 S.W.2d 118, 121 (Tex. App.-El Paso 1996, no writ). An appellant may not challenge a trial court's conclusions of law for factual sufficiency. *BMC Software,* 83 S.W.3d at 794. However, we determine the correctness of the trial court's legal conclusions drawn from the facts. *Id.* If we determine that a conclusion of law is not correct, but the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal. *Id.* Thus, in reviewing challenges to a trial court's conclusions of law, we sustain the judgment on any legal theory supported by the evidence. *In re A.M.,* 101 S.W.3d 480, 484 (Tex.App.-Corpus Christi 2002, no pet.). We do not reverse an incorrect conclusion of law if the trial court's findings of fact support a correct legal theory. *Id.* at 485.

We conclude that the determination that two of the findings cannot be sustained will not govern the ultimate decision in this matter. The trial court also included in its findings that Garza was properly served in March 1999, prior to the hearing on the matter, and that it could find "no basis in fact or in law to grant the bill of review." We interpret this to mean that the trial court considered "any legal theory supported by the evidence." *In re A.M.,* 101 S.W.3d at 484. Accordingly, we may pre-

sume that the trial court considered the three requisites that would entitle a petitioner to relief through bill of review. *See King Ranch,* 118 S.W.3d at 752 (citing *Hagedorn,* 226 S.W.2d at 998); *see also Wembley,* 11 S.W.3d at 927; *Baker,* 582 S.W.2d at 407–08. Thus, we conclude:

1. Garza, by the circumstances presented here, is excused from urging that he was precluded from presenting a meritorious defense through the fraud, accident, or mistake of the opposing party. *See Transworld Fin. Servs.,* 722 S.W.2d at 408 (citing *Rosser,* 378 S.W.2d at 35).

2. Garza alleged, with particularity, sworn facts sufficient to constitute a prima facie meritorious defense and, as a pretrial matter, presented prima facie proof to support the contention. *1985 Chevrolet Pickup Truck,* 778 S.W.2d at 464.

3. Garza remained obligated to establish that his failure to earlier tender the meritorious defense was not due to his own negligence. *Mowbray,* 76 S.W.3d at 683; *Hagedorn,* 226 S.W.2d at 998. Garza's argument presented at the hearing on the bill of review was that he was not negligent because he was not properly served and had no notice of the suit. Garza was also obligated to establish that he was not negligent in pursuing all legal remedies available to him.

We have already concluded the evidence is legally sufficient to sustain the finding that Garza was properly served. We further conclude that the trial court did not abuse its discretion in determining that Garza failed to satisfy all the prerequisites, including the absence of his own negligence, for relief through bill of review. We overrule Garza's second issue.

## VI. CONCLUSION

We affirm the trial court's denial of the petition for bill of review.