

# NUMBER 13-23-00579-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THOMAS RHEMAN,                                                           Appellant,

v.

DEBORAH RHEMAN
N/K/A DEBORAH SIBLEY,                                                  Appellee.

## ON APPEAL FROM THE 103RD DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Chief Justice Contreras**

This appeal arises from a judgment entered in favor of appellee Deborah Rheman n/k/a Deborah Sibley at the conclusion of a jury trial on appellant Thomas Rheman's petition for bill of review. By three issues, Thomas argues that (1) the trial court abused its discretion in denying his bill of review, (2) there was factually insufficient evidence to

support the jury's finding that Thomas was served in compliance with the Texas Rules of Civil Procedure (TRCP), and (3) the trial court did not have authority to divest him of alleged separate property in the final decree of divorce. We reverse and remand.

## I.  BACKGROUND

The parties were married on August 23, 2003. Deborah filed her original petition for divorce and request for a temporary restraining order (TRO) on May 14, 2019. The trial court granted the TRO that same day. Maggie Garcia, a civil process server, attempted to serve Thomas at his residence, but she was unable to deliver the documents because the gates to the property were locked and displayed "no trespassing" signs. Garcia testified at trial that she served Thomas personally at a Starbucks on Ed Carey Drive in Harlingen in May 2019, though her testimony conflicted as to whether she served him on May 27, May 31, or both. Returns of citation for both dates appear in the record as follows[1]:

---

[1] The return of service for the precept states that it was served on May 24, 2019, instead of May 31, 2019.

# CERTIFIED COPY

A TRUE COPY I CERTIFY

| 2019-DCL-02867-D<br>103rd District Court | Deborah Rheman<br>vs.<br>Thomas S. Rheman Jr. |
| --- | --- |

## RETURN OF SERVICE

Executed when copy is delivered:

This is a true copy of the original citation, was delivered to defendant _Thomas S. Rheman Jr._ on the _29_ day of _May_ , 20 _19_ .

NAME/ADDRESS FOR SERVICE

Thomas S. Rheman Jr.
Starbuck's Coffee
Ed Carey Dr.
Harlingen TX 78550

_Cameron_ County, TX ____ Officer

By _Maggie Garcia_ Deputy

Civil Process Server

## OFFICERS RETURN

Came to hand on the _____ day of _____, at _____ o'clock ___m and _____ County, Texas, by delivering to each of the within named defendants in person, a true copy of this _____ with the date of delivery endorsed thereon, together with the accompanying copy of the _____ at the following times and places, to wit:

| NAME | DATE/TIME | PLACE/COURSE/DISTANCE FROM COURTHOUSE |
| --- | --- | --- |
|  |  |  |

And not executed as to the defendant(s)._____

The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being: _____

FEES:

SERVING PETITION/COPY $_____

TOTAL: $_____

_____ Officer

_____ County, TX

By: _____ Deputy

_____ AFFIANT

COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return shall be signed under penalty or perjury and contain the following statement: "My name is _Maggie Garcia_, my date of birth is _9-18-17_, my address is _5110 S. Monroe Ave. Harlingen, Tx. 78550_.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED in _Cameron_ County, State of _Texas_, on the _27_ day of _May_, 20 _19_.

_____

ID Number/Expiration of Certification

Declarant/Authorized Process Server

A TRUE COPY I CERTIFY

LAURA PEREZ-REYES - DISTRICT CLERK

JAN 27 2021

DISTRICT COURT OF CAMERON COUNTY, TEXAS

By _Brenda Nito_

| 2019-DCL-02867-D<br>103rd District Court | Deborah Rheman<br>vs.<br>Thomas S. Rheman Jr. |
|---|---|

## RETURN OF SERVICE

Executed when copy is delivered:
This is a true copy of the original citation, was delivered to defendant _Thomas S Rheman_ on the _31_ day of
_May_, 20_19_.

NAME/ADDRESS FOR SERVICE

_Thomas S. Rheman, Jr._     _Cameron_ _____ Officer
_____ County, TX

By _Jzne Dguia_ _____ Deputy
_Civil Process Server_

## OFFICERS RETURN

Came to hand on the _____ day of _____, at _____ o'clock ____m and _____ County, Texas, by delivering to each of the within named defendants in person, a true copy of this _____ with the date of delivery endorsed thereon, together with the accompanying copy of the _____ at the following times and places, to wit:

| NAME | DATE/TIME | PLACE/COURSE/DISTANCE FROM COURTHOUSE |
|---|---|---|
|  |  |  |

And not executed as to the defendant(s), _____
The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being: _____

FEES:
SERVING PETITION/COPY $_____
TOTAL:     $_____

_____ Officer
_____ County, TX

By: _____ Deputy

_____
AFFIANT

### COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return shall be signed under penalty or perjury and contain the following statement:
"My name is _____, my date of birth is _____, my address is _____

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
EXECUTED in _____ County, State of _____, on the _____ day of _____, 20_____.

_____
ID Number/Expiration of Certification

_____
Declarant/Authorized Process Server

4

Deborah at no point filed amended returns. *See* TEX. R. CIV. P. 118.

After Thomas failed to appear at the TRO hearing, the trial court reset the hearing for June 11, 2019. Garcia testified that she served Thomas with an order on Deborah's motion to extend the TRO at the same Starbucks on June 1, 2019, and the return of service appears in the record. Except for the date of service, the June 1 return is identical to the May 27 return above.

Thomas did not appear at the June 11 hearing. Deborah requested a final default hearing, and the trial court noticed a hearing for August 28, 2019. The record shows the court clerk sent Thomas a notice of the hearing, which was returned with the notation "NO MAIL RECEPTACLE UNABLE TO FORWARD." Thomas did not file an answer or appear at the final hearing. The trial court signed and entered the final decree of divorce on August 28, 2019. The decree granted, among other things, the marital home and real property to Thomas and two adjacent tracts of land consisting of approximately ten acres (Tract 1) and twenty acres (Tract 2) to Deborah. The record shows the court clerk sent Thomas a notice of the final divorce decree on September 10, 2019, which was again returned with the notation, "NO MAIL RECEPTACLE UNABLE TO FORWARD."

Thomas filed his original petition for bill of review on June 30, 2020.[2] Thomas alleged that he did not learn of the default judgment against him until late December 2019. He argued that the returns of service for the original petition for divorce, the TRO, and the order on the motion to extend the TRO were fatally defective because they did not

---

[2] Thomas filed a restricted appeal with this Court in January 2020, which we dismissed for want of prosecution on April 9, 2020, because he failed to make arrangements for payment of the clerk's record. *Rheman v. Rheman*, No. 13-20-00018-CV, 2020 WL 1856485, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 9, 2020, no pet.) (mem. op.).

5

comport with various requirements under the TRCP. He also argued that the notices from the court clerk, while including the correct street name and number, were sent to an incorrect address because the notices had "78550" as the zip code instead of "78552." Thomas then argued that Tracts 1 and 2 are separate property, the trial court was without authority to award them to Deborah, and she "committed a fraud upon this court when [she] asserted that Tracts 1 [and] 2 were the community property of the parties."

A jury trial on Thomas's bill of review was held over four days starting on May 15, 2023. Evidence at trial largely focused on Thomas's alleged mental state after sustaining a head injury in a car accident in September 2006. Thomas testified that for twelve years following the accident, he felt as if he was "in a cocoon or a haze or a fog," and "[he] was going through the motions but couldn't make sense of what was happening outside of [him]." He said he began going by the name of "Thomas No Doubt" because "[t]hat was all [he] could come up with, all [he] knew."[3] He testified that his memories are still foggy, and he is still not back to his prior self.

When counsel asked if he was ever given documents by Garcia, Thomas testified that he could not remember. However, Thomas remembered taking papers he received

---

[3] Thomas testified extensively about his mental state after the accident and how he believed he literally died and came back to life. He said in the twelve years after the accident, "the only thing that kept [him] . . . occupied" was to "put together" the knowledge and research of "Nikola Tesla, Rudolf Steiner, and Viktor Schauberger." He said that while in "heaven," the "knowledge" of these three men instantly "download[ed]" into his mind. He said he went to the Starbucks on Ed Carey Drive almost daily to "[s]urviv[e]," and used the Starbucks' Wi-Fi to continue "studying" because he did not have Wi-Fi at his home. Thomas said the "cocoon" ended in 2018 because God told him, "'I'm going to bring you out of this,'" and he "woke up the morning[] [of] the twelve-year anniversary of [the accident]," and heard a sound "like a physical pop, like the cocoon had broken."

Witnesses, including his daughter, sisters, and friends, contended that Thomas's personality and mental capabilities declined as a result of the car accident. Witnesses alleged that Thomas became introverted, withdrawn, "lost," and "delusional," and began going by "Thomas No Doubt," "Ezequiel," or "Brother Thomas." On the other hand, Deborah contended that there was no change in Thomas after the accident, and when Thomas referred to himself using nicknames, he was just "play[ing] around."

6

at the Starbucks on Ed Carey Drive one day to an address listed on the outside of the envelope. He said that he "returned" them because the papers were addressed to Thomas Rheman, but he was "Thomas No Doubt" at that time, and he thought there had been a mistake. He said he never read the papers and did not know what they were. He remembered that a man was "very angry that day," which "stuck in [his] mind," and he acknowledged that the man was Deborah's lawyer.[4] Lastly, Thomas admitted that he did not have a mailbox because he had removed it some years prior.

Garcia testified that she personally served Thomas on May 27, 2019, May 31, 2019, and June 1, 2019. However, she also testified that she "didn't write anything" on the May 31 return specifically because that day she only "attempted to serve" Thomas at his residence. Garcia admitted that she did not fill out the time, place, or hour that Thomas was served, "the day and hour on which [s]he received" the citation, or the manner in which she served Thomas on the returns of service.

The jury instructions contained eight questions. Relevant here, the jury found that the returns of service for Deborah's original petition, the TRO, and the order on the motion to extend the TRO failed to state: (1) "the date and hour on which the citation was received by the process server," (2) "the date and hour that the process was served," (3) "the address that [Thomas] was served," or (4) "the manner in which the process server executed service." *See* Tex. R. Civ. P. 16, 105, 107(b)(4), (6), (7), (8). The jury also answered "Yes" to question five, which asked:

---

[4] Jamie Ann Tovar, secretary for Deborah's lawyer, testified that after giving the citation and precept to Garcia at some point in May 2019, Thomas came to the office and said "that the papers were given to him by mistake. . . . He was not Mr. Rheman. He took them because he thought they were a blessing from his father." Tovar said that she pulled up his picture to confirm his identity, and Thomas "just smiled" and "didn't say anything."

7

Our law provides that a person is served if they are served in compliance with the Texas Rules of Civil Procedure 16, 105, and 107.

Do you find that Thomas Rheman was served with citation, the original petition for divorce, the precept to serve and the temporary restraining order?

The judge adopted the jury's findings and entered judgment denying Thomas's bill of review. Thomas filed a motion for judgment notwithstanding the verdict and motion for new trial. The trial court denied the motions. This appeal followed.

## II. SERVICE OF PROCESS

By his first issue, Thomas argues that the trial court abused its discretion in denying his bill of review because the returns of service failed to strictly comply with the laws governing service of process.

### A. Standard of Review

It is well established that a default judgment is improper against a defendant who has not been served in strict compliance with the law. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) ("For well over a century, this court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack."); *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *Garza v. Att'y Gen. of Tex.*, 166 S.W.3d 799, 811 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.); *Lewis v. Ramirez*, 49 S.W.3d 561, 564 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) ("A default judgment cannot withstand a direct attack by a defendant who shows that he was not served in strict compliance with the law.") (citations omitted); *Regalado v. State*, 934 S.W.2d 852, 853 (Tex. App.—Corpus Christi–Edinburg 1996, no writ) (same). "There is no presumption in favor of valid issuance, service, and return of citation in the face of a direct attack on a default

8

judgment." *Lewis*, 49 S.W.3d at 564 (first citing *Primate Constr.*, 884 S.W.2d at 152; and then citing *Wilson*, 800 S.W.2d at 836). "Accordingly, when such strict compliance is NOT demonstrated, there is error on the face of the record, and reversal of the judgment is warranted." *Regalado*, 934 S.W.2d at 854.

"A bill of review is a direct attack on a judgment." *WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021). A bill of review proponent claiming non-service need only show that "the judgment was rendered unmixed with any fault or negligence of their own." *Caldwell v. Barnes*, 154 S.W.3d 93, 97 (Tex. 2004). This element "is conclusively established if the plaintiff can prove that he or she was never served with process." *Id.* We review the grant or denial of a bill of review for an abuse of discretion. *Layton v. Nationsbanc Mortg. Corp.*, 141 S.W.3d 760, 762–63 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citations omitted). "A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles." *Id.* at 763.

**B.    Analysis**

Thomas argues that he was not served in "strict compliance" with the TRCP because the jury found that the returns of service failed to state: (1) the date and hour on which the citation was received by the process server, (2) the date and hour that the process was served, (3) the address at which Thomas was served, and (4) the manner in which the process server executed service. *See* TEX. R. CIV. P. 16, 105, 107(b)(4), (6), (7), (8). Thus, he claims, the trial court abused its discretion when it denied his bill of review based on the jury's finding that he was "served in compliance with the Texas Rules of Civil Procedure 16, 105, and 107."

The jury was given the definitions of each rule. Rule 16 states:

> Every officer or authorized person shall endorse on all process and precepts coming to his hand the day and hour on which he received them, the manner in which he executed them, and the time and place the process was served and shall sign the returns officially.

*Id.* R. 16. Rule 105 states:

> The officer or authorized person to whom process is delivered shall endorse thereon the day and hour on which he received it, and shall execute and return the same without delay.

*Id.* R. 105. Finally, rule 107(b) states, among other things, that:

> The return, together with any documents to which it is attached, must include the following information:
>
>  . . . .
>
> (4)    the date and time the process was received for service;
>
> . . . .
>
> (6)    the address served;
>
> (7)    the date of service or attempted service;
>
> (8)    the manner of delivery of service or attempted service[.]

*Id.* R. 107(b)(4), (6), (7), (8).

Here, the May 27 and June 1 returns fail to include a street number in the address Thomas was served, and the May 31 return does not include any address. *See id.* Rs. 16, 107(b)(6). None of the returns include the time Thomas was served. *See id.* R. 16. None of the returns include the manner in which service was executed.[5] *See id.* Rs. 16,

---

[5] *But see Myan Mgmt. Grp., L.L.C. v. Adam Sparks Fam. Revocable Tr.*, 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.) (holding that "[t]he term 'delivered,' without the addition of 'in person,'" was sufficient to describe the "manner" in which the defendant was served by the process server); *Camoco, LLC v. Terrazas*, 569 S.W.3d 270, 274 (Tex. App.—El Paso 2018, no pet.) ("As several of our sister courts have concluded, the term "by delivering" denotes personal service." (citations omitted)).

107(b)(8). None of the returns include the date and time Garcia received the documents to serve Thomas, which fails to comply at all with rule 105. *See id.* Rs. 16, 105, 107(b)(4); *In re Z.J.W.*, 185 S.W.3d 905, 907–08 (Tex. App.—Tyler 2006, no pet.) (reversing default judgment because "the process server wholly failed to endorse the process with the day and hour on which he received it. As such, the State cannot show that the process was in strict compliance with Texas Rule of Civil Procedure 105").

"The return of service is not a trivial, formulaic document." *Garza*, 166 S.W.3d at 811 (citing *Primate Constr.*, 884 S.W.2d at 152–53). We agree with Thomas that the returns of service were fatally defective. *See In re Z.J.W.*, 185 S.W.3d at 907–08 ("We cannot conclude that the entirety of the text of Rule 105 amounts to a minute detail or formality, therefore, because the process in the case at hand wholly failed to comply with Rule 105, the default judgment rendered was improper."); *Primate Constr.*, 884 S.W.2d at 152 (overturning default judgment because the "return show[ed] that the defendant was served with a version of the plaintiffs' petition in which [it] was not named as a defendant"); *Wilson*, 800 S.W.2d at 836–37 (overturning default judgment even though defendant was aware of suit because he was not served in strict compliance with TRCP 106(b)); *see also Gen. Motors Acceptance Corp. v. Sepulveda*, No. 13-08-00055-CV, 2010 WL 1019588, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 18, 2010, no pet.) (mem. op.) (holding that the trial court lacked personal jurisdiction to render default judgment because the return of citation failed to include the officer's signature, rendering "the return fatally defective").

Deborah argues the defects on the returns are mere technical defects, and she notes that "strict compliance with the rules [governing service of process] does not require

11

'obeisance to the minutest detail.'" *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (quoting *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no writ)). Deborah also argues that improper service is irrelevant as long as the record as a whole shows that the defendant was served. *See Williams v. Williams*, 150 S.W.3d 436, 443–44 (Tex. App.—Austin 2004, pet. denied) ("As long as the record as a whole, including the petition, citation, and return, shows that the citation was served on the defendant in the suit, service of process will not be invalidated." (citations omitted)); *Regalado*, 934 S.W.2d at 854 (same).

However, the cases cited by Deborah involve far less severe technical errors on the face of the record or situations where proper service was not in dispute. *See Williams*, 150 S.W.3d at 443–45 (finding that the failure to include the name of the plaintiff on the return of service was "not a minute detail" but upholding default judgment because the return nevertheless reflected that the defendant was properly served and the defendant "admitted that she was properly served"); *Regalado*, 934 S.W.2d at 853–54 (upholding default judgment because the return's "hand-written notation 'c/o Maria Regalado'" fairly and reasonably "indicate[d] that the executing officer left the citation *in the care of* Maria Regalado"); *Ortiz*, 926 S.W.2d at 612–13 (holding that the "the omission of the accent from 'Avanté,'" "the substitution of the symbol '@' for the word 'at,'" and "the omission of 'Inc.,'" on the return did not invalidate service); *Herbert*, 915 S.W.2d at 871 ("The fact that the original petition is referred to as a complaint does not make it any less clear that appellant was served with the appropriate documents."). Unlike these cases, the returns here contained a multitude of defects and ignored TRCP 105 completely. *See In re*

*Z.J.W.*, 185 S.W.3d at 907–08; *Joseph v. Jack*, 624 S.W.3d 1, 8–9 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (upholding default judgment because the return's sole alleged defect—that the officer "printed" his name on the return instead of signing the return—was sufficient to count as a signature under TRCP 107(e)); *In re M.C.B.*, 400 S.W.3d 630, 634 (Tex. App.—Dallas 2013, no pet.) (upholding default judgment because the return's sole defect—that a copy of the citation and petition was delivered "by 106 to door of [appellant's] address" [sic]—was in strict compliance based on process server's testimony that he duct taped the forms to appellant's door); *see also Cotton Patch Cafe v. McCarty*, No. 2-05-082-CV, 2006 WL 563307, at *7 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op.) (upholding default judgment because "[t]he return clearly complie[d] with the requirements of Rule 107, but simply contain[ed] an incorrect final numeral in the registered agent's zip code").

While there was some evidence that Thomas was provided with copies of the documents at issue, "strict compliance" with the rules for service of citation must affirmatively appear on the record in order for a default judgment to withstand direct attack. *Primate Constr.*, 884 S.W.2d at 153 ("It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished."); *Wilson*, 800 S.W.2d at 836; *Garza*, 166 S.W.3d at 811; *see PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273–75 (Tex. 2012) (concluding appellant could not collaterally attack default judgment based solely on technical defects on the return of service). There is no dispute that Thomas's bill of review is a direct attack on the default judgment and was brought within the applicable four-year limitations period. *Cf. PNS Stores*, 379 S.W.3d at 271–72.

The record shows the returns of service did not comply—strictly or otherwise—with rules 16, 105, and 107(b), and thus, there was legally insufficient evidence to support the jury's answer to question five. The trial court erred by rendering judgment on that finding. We hold that the trial court abused its discretion when it denied Thomas's bill of review. We sustain Thomas's first issue.[6]

### III.     CONCLUSION

We reverse the trial court's judgment and remand the case for further proceedings consistent with this memorandum opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
30th day of December, 2024.

---

[6] Because we sustain Thomas's first issue, we need not consider his remaining issues. *See* TEX. R. APP. P. 47.1.

14