

# NUMBER 13-24-00261-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JASON KELSEY,**                                                                 **Appellant,**

**v.**

**MARIA M. ROCHA,**                                                               **Appellee.**

---

## ON APPEAL FROM THE 92ND DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Silva**

Pro se appellant Jason Kelsey appeals the trial court's order denying his petition for bill of review, raising multiple issues in his brief. Because resolution of his first issue is dispositive, we affirm.

## I.    BACKGROUND

### A.    Agreed Divorce Decree

On March 11, 2019, appellee Maria M. Rocha filed for divorce against Kelsey. The petition stated that "[t]he parties were married on or about August 1, 2014[,] and ceased to live together as spouses on or about January 17, 2019." The petition further stated the parties have one son together, born on March 13, 2018. Rocha claimed that the parties might agree on the division of their property and requested that the trial court approve their anticipated agreement. According to the record, Kelsey was served with the petition for divorce via certified mail while incarcerated on March 25, 2019. Kelsey later signed an agreed final divorce decree during his incarceration in front of a notary on August 20, 2019.

The agreed final divorce decree reflects that the divorce court conducted a hearing regarding the parties' agreement on September 10, 2019. Rocha appeared in person with counsel and Kelsey appeared pro se. After swearing in the parties, the court found that the agreement regarding the parties' marital estate is a just and right division "having due regard for the rights of each party and the child of the marriage." Rocha was awarded, as her sole and separate property, "ALL OF [KELSEY'S] RIGHT, TITLE AND INTEREST TO ANY REAL ESTATE, ROYALTY AND MINERAL INTEREST LOCATED IN MCMULLEN COUNTY, TEXAS," including eleven specifically-identified tracts. Rocha was also awarded "100% of the business known as J & M South Texas Trucking, LLC together with all personal and real property owned by said business." Kelsey was awarded, among other things, all individual retirement accounts, employee pensions, annuities, and life insurance benefits in his name, as well as 401(k) plan, any profit-sharing plan, accrued

2

unpaid bonuses, and any "other benefits existing by reason of [Kelsey]'s past, present, or future employment." The decree directed Rocha to pay "100% of any business debt of J & M South Texas Trucking, LLC" but stated "[t]his debt does not include any IRS debts owed by [Kelsey]." The parties also agreed that Kelsey would be responsible to pay for all debt incurred under his name and pay taxes from the date of their marriage through December 31, 2018, including any penalties or interest. Kelsey agreed to execute and deliver to Rocha a Warranty Deed. The decree also stated that it served as muniment of title to transfer ownership of the property awarded to Rocha.

The decree also contained an acknowledgement by the parties that, prior to signing the decree, they had

> [r]ead this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. [Rocha] and [Kelsey] acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just an right division of the martial debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

On September 10, 2019, the divorce court signed the agreed decree which also included the signatures of both Kelsey and Rocha.

## B. Petition for Bill of Review

On May 19, 2023, approximately forty-four months after the agreed final decree of divorce was signed by the court, Kelsey filed an original petition for bill of review claiming that Rocha and her attorney "concealed [his] known separate property as community property." Kelsea argued "Rocha received 100 [percent] community property, which was unconscionable and disproportionable" and therefore he had a meritorious claim. He

3

further alleged that Rocha misrepresented to the divorce court that a marriage existed when in fact he was threatened with financial ruin and loss of his property if he did not agree to the division of the martial estate as set forth in the divorce decree. Kelsey additionally asserted that Rocha told him she would continue her relationship with him after the divorce. Kelsey further claimed Rocha did not properly transfer the properties after their divorce. Kelsey stated he had been incarcerated and that Rocha had "full durable Power of Attorney [for him] prior and at [the] time of suit." He further alleged that Rocha informed him "that divorce was the only way to protect [his] money and properties and promised to give everything back." Kelsey pleaded that Rocha advised him not to hire an attorney for the divorce proceedings, that she had full control over his money and property, that she would not allow him to access his money or properties to seek legal assistance, and that he "was under duress prior and during suit[ and his] conduct was not intentional or the result of negligence." The following documents were attached to his petition: his father's death certificate, an affidavit of heirship, a blank Bexar County marriage application form, a document stating the marriage license between Kelsey and Rocha was "Not Returned for Recordation," a document from the Texas Department of State Health Services stating a marriage application between Kelsey and Rocha was "NOT FOUND," screenshots of two text messages, Rocha's original petition for divorce, the agreed final divorce decree, and a McMullen County Appraisal District property description. Kelsey requested the trial court set aside the divorce decree.

On September 27, 2023, Rocha filed a response to Kelsey's petition for bill of review alleging, among other things, that Kelsey lacked a meritorious defense, that he failed to present any newly discovered evidence, and that he admitted he was negligent

4

regarding the litigation proceedings. Rocha also asserted affirmative defenses. On September 28, 2023, she filed a motion to dismiss the petition for bill of review arguing that "[Kelsey] has not proper[l]y pled for relief and has failed to offer any proof to substantiate his claims."

On November 27, 2023, Kelsey requested leave to file an amended petition for bill of review contending that the divorce court abused its discretion by dividing the martial estate without evidence of the value of the property. He argued that he has a meritorious claim to a portion of the community property awarded to Rocha. Kelsey further argued that he has "no legal remedy by post[-]judgment motion or by appeal available to avoid the effect of the erroneous judgment because [he] has no access to money or properties. [He] has been incarcerated since September 2017."

On November 29, 2023, Kelsey filed an objection to Rocha's motion to dismiss arguing that he did have a meritorious claim and, further, that the divorce court lacked subject-matter jurisdiction over the proceedings because no marriage existed between the parties. He further argued that the divorce court abused its discretion on the division of the property because his "separate property was mischaracterized as community property." Lastly, he argued that Rocha failed to answer his petition for bill of review.

On November 30, 2023, the trial court held a non-evidentiary hearing on Kelsey's petition for bill of review and Rocha's motion to dismiss. At the hearing, the trial court asked Kelsey whether he was going to hire counsel and Kelsey explained that he did not have the money to do so. Rocha's motion to dismiss was subsequently heard. During this hearing, Kelsey asserted that the parties were not married in 2014, and he described a

5

July 25, 2014 photograph of the parties.[1] Kelsey argued that the photograph did not establish the parties were married because when it was taken, Rocha "had never even stepped into my home." After hearing arguments from both parties, the trial court took Rocha's motion under advisement.

On April 30, 2024, the trial court held a hearing on Kelsey's motion for leave to file his amended petition for bill of review. Rocha's counsel stated that the parties were waiting on the trial court's ruling on the bill of review itself. The following exchange occurred:

| THE COURT: | At this point[,] you don't intend to hire an attorney? |
|---|---|
| [Kelsey]: | I have no access to any funds or money— |
| . . . . | |
| THE COURT: | So what I'm asking you is to, on the record, ask me for the relief that you're requesting. |
| [Kelsey]: | Okay. Well, the relief I'm requesting is to have a warranty of deed—all the McMullen County properties that were given—my separate property, as I might add to the record, was given to [Rocha] in the community property estate. And I want to get that separate property back over into my possession, and I'm asking the Court—and I have a judgment on file that was filed a long time ago asking for all the relief in there, any and all property conveyed in the final decree of divorce . . . , including but not limited to all property listed in exhibit of that final divorce decree, including any new and oil leases and gas division orders from any of the McMullen County properties that were improperly conveyed to [Rocha]. |

---

[1] Kelsey did not ask to have the photograph admitted as evidence.

6

. . . .

> And, if you would have looked in the motion—or the judicial notices I . . . e-filed there, they will show that [Rocha] was, I guess you could say, I don't know what you want to call it, but received over [$]135,000 of my funds and laundered them through I guess whatever you want to call it, through a joint bank account that I attempted to close, and then transferred the funds to an unknown account, and did this over a period of a year and a half, leaving me with an IRS bill of $27,000 and I'm unable to pay that because [Rocha] ha[s] kept all proceeds that was given to her under the fraudulent transfer of assets.

Rocha's counsel informed the trial court that a final hearing on the bill of review was previously held, and Kelsey did not file any post-judgment motions. Additionally, Rocha's counsel asserted that the evidence and exhibits had already been admitted and "there[ is] nothing else for the [c]ourt to do except issue a ruling." Her counsel also stated that "as far as anybody committing fraudulent acts, he's in prison" and "[t]hat's the reason why [Kelsey] signed off to the divorce decree, giving his wife everything." Kelsey objected, contending there was no marriage or common law marriage which gave the trial court jurisdiction and that a "signature does not confirm jurisdiction." Kelsey requested findings of fact and conclusions of law concerning this hearing that same day. On May 7, 2024, the trial court denied Kelsey's motion for leave to file his amended petition for bill of review.

On May 9, 2024, the trial court signed a judgment denying Kelsey's petition for bill of review and ordered that the agreed final divorce decree remains in full force and effect. This appeal ensued.

## C. Findings of Fact and Conclusions of Law

On January 9, 2025, the trial court issued the following findings of fact and

conclusions of law, among others, in support of its ruling:

6. On November 30, 2023, [Kelsey], [Rocha], and her attorney appeared. The Court advised [Kelsey] prior to the hearing whether he intended to hire an attorney [sic]. [Kelsey] stated he was incarcerated and could not afford an attorney and that he wished to proceed.

. . . .

8. The Court finds that a final divorce hearing was scheduled on September 10, 2019, and was proven up by [Rocha] and her attorney. The Court finds that [Kelsey] signed the Final Decree of Divorce in jail and in front of Raul Lopez, a notary public for the State of Texas.

9. The Court finds that [Kelsey] agreed to all terms of the divorce and the Court found that the terms of the divorce were a just and right division of the parties' estate due to [Kelsey] being incarcerated and not scheduled for release until 2029.

10. The Court further finds that [Kelsey] has failed to satisfy the requirements for obtaining relief through a bill of review.

11. The Court finds that [Kelsey] has not proven, by a preponderance of the evidence, any of the grounds necessary for a bill of review, namely:

    (1) A meritorious defense to the underlying cause of action that he did not have an opportunity to present. The Court finds that [Kelsey] agreed to the terms of the divorce and that [he] could have hired an attorney for the underlying divorce. The Court finds that [Kelsey] could have hired an attorney, but he chose not to. [Kelsey] did not offer any admissible evidence to sustain his meritorious defense to the underlying Final Decree of Divorce.

    (2) That [Kelsey] was prevented from offering and admitting evidence of any fraud, accident[,] or wrongful act of the opposing party or official mistake in the underlying divorce. The Court finds that [Kelsey] did not offer any competent and admissible evidence of any fraud, accident or wrongful act of [Rocha] or that an official mistake was committed by the Court.

8

(3)     Unmixed with any fault or negligence on [Kelsey]'s part. The Court finds that in [Kelsey]'s Original Petition for Bill of Review page 2, [Kelsey] stated "[he] had negligence regarding the lack of litigation to the allegations in the Original Petition for Divorce." The Court finds that [Kelsey] judicially admitted that he was negligent for the lack of litigation and or hiring an attorney for his divorce.

. . . .

14.     The Court concludes that [Kelsey]'s Bill of Review does not meet the legal standard for setting aside an agreed final judgment.

15.     The Court concludes that [Kelsey] has not demonstrated a meritorious defense to the underlying cause of action, nor has [Kelsey] shown that he was prevented from making such a defense by the fraud, accident or wrongful act of the opposing party or official mistake in the underlying divorce.

16.     The Court concludes that [Kelsey] judicially admitted he was negligent in his Original Bill of Review by not hiring an attorney for the underlying divorce.

## II.     STANDARD OF REVIEW AND APPLICABLE LAW

A bill of review is an equitable proceeding filed by a party seeking to set aside a judgment that is no longer subject to challenge by a motion for new trial or appeal. *WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021) (per curiam); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). To be successful, a bill of review complainant must plead and present proof of the following elements: (1) a meritorious claim or defense to the cause of action alleged to support the prior judgment, (2) which the complainant was prevented from making by official mistake or by the opposing party's fraud, accident, or wrongful act, (3) unmixed with any fault or negligence by the complainant. *WWLC Inv., L.P.*, 624 S.W.3d at 799 (quoting *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam)).

9

"[B]ills of review exist to provide a failsafe against manifest injustice and the wrongful deprivation of a litigant's right to trial and appeal in extraordinary circumstances." *Bowers v. Bowers*, 510 S.W.3d 571, 577 (Tex. App.—El Paso 2016, no pet.). However, courts do not readily grant bills of review "[b]ecause it is fundamentally important in the administration of justice that some finality be accorded to judgments." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015) (quoting *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)).

We review the denial of a bill of review under an abuse of discretion standard. *Gonzalez v. Tapia*, 287 S.W.3d 805, 807 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied). In reviewing the denial of a bill of review, "we indulge every presumption in favor of the trial court's ruling and we will not disturb that ruling unless the trial court abused its discretion." *Garza v. Att'y Gen.*, 166 S.W.3d 799, 808 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles. *Id.* When the inquiry on the bill of review concerns questions of law, we review the trial court's decision de novo. *Id.*

"A trial court's findings of fact have the same force and dignity as a jury's verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 534 S.W.3d 65, 72 (Tex. App.—San Antonio 2017), *aff'd*, 572 S.W.3d 647 (Tex. 2019); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.). "[W]hen a party challenges the trial court's findings of fact, . . . we review those findings by the same standards we use in reviewing the sufficiency of the evidence supporting a jury's answers." *Garcia v. Tautenhahn*, 314 S.W.3d 541, 544 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.). "If there is any

10

evidence of a probative nature to support the trial court's judgment, we will not set it aside, and we may not substitute our findings of fact for those of the trial court." *Id*. "Unchallenged findings of fact are binding on the appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding." *Sharifi*, 370 S.W.3d at 147. "When . . . the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for sufficiency of the evidence." *Id.*

If a party with the burden of proof challenges the legal sufficiency of an adverse finding, we must determine whether the complaining party has demonstrated on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Barnes v. Mathis*, 353 S.W.3d 760, 762–63 (Tex. 2011) (per curiam). In a "matter of law" challenge, we "first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). If there is no evidence to support the finding, we will examine the entire record in order to determine whether the contrary proposition is established as a matter of law. *Id.* We will sustain the issue only if the contrary proposition is conclusively established. *Id.* The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

"When a party attacks the factual sufficiency of an adverse finding on an issue on which [he] has the burden of proof, [he] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. We "must consider and weigh all of the evidence and can set aside a

verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* Under either standard, we must defer to the trial court's factual determinations of witness credibility and demeanor. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We review a trial court's conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *Id.* "We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence." *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). "Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory." *Id.* "Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law." *Id.*

## III.   ANALYSIS

Kelsey argues that the trial court abused its discretion when it denied his bill of review. He specifically asserts that the trial court's findings and conclusions are insufficient and not supported by the record evidence. In contrast, Rocha argues that the trial court did not abuse its discretion because Kelsey failed to offer any evidence of a meritorious defense. Rocha also argues there is no evidence that fraud, accident, or any wrongful act by Rocha, unmixed with fault or negligence by Kelsey, prevented Kelsey from making a meritorious defense.

In a bill of review proceeding, Kelsey must first show the existence of a meritorious

12

claim or defense to the cause of action alleged in the prior proceedings. *WWLC Inv., L.P.*, 624 S.W.3d at 799. In relation to this element, the trial court found that Kelsey "agreed to the terms of the divorce"; that he "could have hired an attorney, but he chose not to"; and that he "did not offer any admissible evidence to sustain his meritorious defense to the underlying Final Decree of Divorce."

In his petition, Kelsey alleged that he discovered he was never married to Rocha, that Rocha and her attorney concealed his separate property as community property, and that Rocha received all community property from the divorce which was unconscionable and disproportionable. Kelsey presented no evidence to the trial court at the hearings on his bill of review. Further, the record demonstrates that Kelsey represented himself pro se in the underlying divorce proceeding and agreed and signed the final divorce decree during his imprisonment in the presence of a notary. In this regard, he accepted the role of a pro se litigant and had the burden of defending against Rocha's claims with diligence, the same standard as any licensed counsel. *See Barrientos v. Barrientos*, 675 S.W.3d 399, 404 n.2 (Tex. App.—Eastland 2023, pet. denied) (noting pro se litigants are held to the same standards as licensed attorneys and are required "to be familiar with and comply with all applicable laws and rules of procedure").

We hold that the trial court's findings in relation to the first element are legally sufficient. *See Wilson*, 168 S.W.3d 802 at 822. We further hold that the contrary evidence does not render the findings "clearly wrong and unjust"; thus, the findings are factually sufficient. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we find the trial court did not err in concluding that Kelsey "has not demonstrated a meritorious defense to the underlying [divorce proceeding]." *See WWLC Inv., L.P.*, 624 S.W.3d at 799.

13

Next, Kelsey must establish that he was prevented from making his meritorious claim or defense by official mistake or by the opposing party's fraud, accident, or wrongful act. *Id.* In relation to this element, the trial court found that "[Kelsey] did not offer any competent and admissible evidence of any fraud, accident or wrongful act of [Rocha] or that an official mistake was committed by the Court."

Kelsey's petition alleged that he was threatened by Rocha with financial ruin and total loss of property if he did not agree to the terms of the divorce, that Rocha and her counsel assured him that the agreement was for asset protection, and that Rocha would continue her relationship with Kelsey. He further alleged that Rocha informed him "that divorce was the only way to protect [his] money and properties and promised to give everything back." Other than the allegations in Kelsey's petition, the record does not contain any evidence establishing fraud, accident, or a wrongful act on behalf of Rocha or her counsel. Neither Kelsey's pleadings themselves, nor the allegations within them, constitute evidence. See *Yu v. Koo*, 633 S.W.3d 712, 729 (Tex. App.—El Paso 2021, no pet.).

Under these circumstances, we hold that the trial court's findings in relation to the second element are legally sufficient. *See Wilson*, 168 S.W.3d 802 at 822. We further hold that the contrary evidence does not render the findings "clearly wrong and unjust"; thus, the findings are factually sufficient. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we find the trial court did not err in concluding that Kelsey failed to "show[] that he was prevented from making . . . a [meritorious] defense by the fraud, accident, or wrongful act of [Rocha] or official mistake in the underlying divorce [proceeding]." *See WWLC Inv., L.P.*, 624 S.W.3d at 799.

14

As we have determined the trial court did not err regarding its findings and conclusions concerning the elements above, we further hold that the trial court did not err when it concluded that "[Kelsey]'s Bill of Review does not meet the legal standard for setting aside an agreed final judgment."[2] *See Sheetz*, 503 S.W.3d at 502. Therefore, the trial court did not abuse its discretion when it denied Kelsey's petition for bill of review. *See Gonzalez*, 287 S.W.3d at 807. Kelsey's first issue is overruled. In light of our conclusion, we need not address his other issues. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").[3]

## IV.   CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
23rd day of April, 2026.

---

[2] Because we have concluded that the first and second elements concerning a bill of review were supported by the record, we need not address the third element. *See* TEX. R. APP. P. 47.1; *WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021) (per curiam).

[3] All pending motions are dismissed as moot.

15